# WINDSOR COUNTY.

## FEBRUARY TERM, 1839.

---

PRESENT, HON. CHARLES K. WILLIAMS, *Chief Justice.*
" STEPHEN ROYCE, 
" JACOB COLLAMER, } *Assistant Justices.*
" ISAAC F. REDFIELD, 

---

## BILLY BROWN *v.* HENRY C. HOADLEY.

Under the school act of Nov. 1827, and the explanatory act of 1833, the voters in any school district may assess a tax for the support of a school, upon such scholars, only, as actually attend the school, and the term "otherwise," in the former act is to be interpreted by the practice that obtained under the original school act of 1797.

The limitation to a maximum amount, of the sum to be raised in a school district, imports sufficient certainty, and the expenses, to be incurred within the limit prescribed, is a matter properly intrusted to the prudential committee.

THIS was an action of trespass, for taking a heifer, originally brought before a justice's court, in Windsor county, where the plaintiff recovered $17,20, damages and costs; from which judgment the defendant appealed to the county court.

The defendant's plea was the general issue, accompanied by the following special notice, viz.:—

" And the said Henry C. Hoadley gives notice to theplaintiff, that, on trial of the issue aforesaid, he will give in evidence the following facts, to wit ;—that, at the time of the committing the said supposed trespass, to wit, on the 23d day of March, 1838, and for more than thirty days before that time, he was collector of school district No. 15, in Woodstock, having been legally elected to said office ; that said district was a legally organized school district, and had been for more than twenty years then next before ; that the plaintiff was an inhabitant of said district, and liable to pay taxes therein ; that at a meeting of the legal voters in said district, legally warned and holden at the school house in said district, on the 21st day of October, 1837, it was, among other things, and in pursuance of an article contained in the warning for said meeting, voted to raise a sum, not exceeding one hundred dollars, for the support of the school to be kept in said district the then next ensuing winter, said sum to be the amount of the expense of said school, after deducting sixty dollars of public money, and to be raised by a tax upon the inhabitants of said district, to be assessed in the ratio or proportion that they should send their scholars to said school, and to be paid into the treasury of said district on or before the first day of March then next; that at a subsequent meeting of the legal voters in said district, legally warned and holden at the school house in said third district, on the 27th of November, 1837, it was voted to prolong the time for the payment of said tax, to the first day of April then next ensuing ; that said plaintiff had scholars and sent them to said school ; that, on said 21stday of October, 1837, and from that time until said first day of April, 1838, Daniel Ransom was the prudential committee of said district, having been legally elected to said office, and, as such committee, on the 13th day of March, 1838, he made out and signed a rate bill of said tax, and apportioned the sum to the several persons in said district, who had sent their scholars to said school, agreeably to the vote of said district raising said tax, and that, among others, the plaintiff was assessed, or his tax apportioned and set in said rate bill, at the sum of three dollars and thirty three cents ; that a warrant was issued by Park Morse, a justice of the peace for said county, on the 14th day of

March, 1838, in due form of law, directed to the defendant, as collector of rates or taxes for said district, commanding him to levy and collect the same and to pay the same to the treasurer of said district on or before the first day of April then next ensuing ; and that said rate bill and warrant were, by the said Ransom, on the 14th day of March, delivered to said defendant to levy and collect said tax ; that said defenant, as collector as aforesaid, applied to said plaintiff for said tax, and exhibited to him said rate bill ; that said plaintiff refused to pay the same ; that said defendant gave notice to said plaintiff when and where he would attend to receive said tax ; that he attended, at said time specified, and demanded payment of the plaintiff, and upon said plaintiff's refusal and neglect to pay the .same, he, the said defendant, seized, took and carried away, by virtue of said rate bill and warrant, and in the proper service and collection of the same, the heifer mentioned in the plaintiff's declaration, and this is the taking complained of in the plaintiff's declaration."

The plaintiff showed the taking of the heifer by the defendant, and its value.

The defendant offered evidence tending to prove the facts stated in the notice under the general issue, which evidence was objected to by the plaintiff and rejected by the court, and judgment was rendered for the plaintiff, to which the defendant excepted.

*Williams & Tracy*, for defendant.

By the 11th section of the act of November 17, 1827, relating to common schools, (2 stat. 141,) it is provided that any school district shall have power " for the purpose of supporting its school, to raise money by *subscription or otherwise ;*" and the enquiry here is, does it authorize the district to raise it on the scholar?

We insist that it does ; that the legislature, when they made use of the terms " *by subscription or otherwise,*" intended something more than to raise money by subscription merely ; and that raising it on the scholar is within the fair and reasonable construction of the language used.

If the legislature intended, simply to confer the power of raising money by subscription, why have they not said so? If they intended any thing more, what form of raising it is more

obviously within their intent and meaning than raising it on the scholar?

We are not aware that this court have given any construction to this proviso, but we think the legislature have given a construction to it, which should have great weight with the court in deciding the question.

The 20th section of the statute of November 6, 1833, (2 stat. 146,) provides, that it shall not be construed to empower or authorize any school district to raise money, for the purpose of supporting its school, on any scholar who does not attend school.

It does not, in express terms, say that they may raise money on such scholars as do attend school, but it does by the strongest implication.

The evident intent of the legislature was to give a construction to this very proviso and to limit the power of assessing taxes under it, upon the scholar, to such scholars as actually attended school. If it conferred no such power it was absurd to attempt to limit it, and it is very clear that the legislature understood it to confer such power or they would not have undertaken to limit it.

It is a legislative assent to the exercise of the power. If they had not intended it, they would have said that this power should not be so construed as to authorize the raising of any money on the scholar, instead of limiting it to such as did attend the school.

But it is objected to the proceedings of the district, in raising the tax, that the vote did not fix the sum to be raised with sufficient certainty.

We insist that it did. The vote " was to raise a sum not exceeding $100, for the support of the school to be kept in said district the then next ensuing winter ; said sum to be the amount of the expenses of said school, after deducting $60 public money." "*Id certum est quod certum reddi potest.*"

Again, it is objected that the tax bill could not be made out within thirty days after the tax was voted, as the amount to be raised could not be ascertained within that time.

To this, we answer, that the proviso contains no provision that renders it necessary that it should be so, and that the

Brown
v.
Hoadley.

provisions of the 11th section of the act of November 17, 1827, do not apply to the present case.

*E. Hutchinson*, for plaintiff, contended that the tax was illegal, because,

1. It was so raised as to render it impossible for the committee to make up the rate bill within thirty days from the vote of the tax. *Waters* v. *Daines*, 4 Vt. R. 603, 604.

2. School districts have no power to vote taxes and enforce their collection by rate bill and warrant, but what is derived from the statute, and in so doing, like all corporate bodies, which assume that power, must be shown to have confined themselves to the mode and manner, as well as subject matter prescribed in the act conferring upon them the power. 2 Kent's Com. 240. *Bates* v. *Haseltine et al.*, 1 Vt. R. 81, 2 vol. Vt. Statutes, p. 140. §11.

The statute gives no power to vote taxes, in any form, except for the support of *public* schools, which are to be free to all scholars in the district, between the ages of four and eighteen years. That the legislature contemplated nothing, but establishing a system of free school education, to be freely open to all, the children of the poor as well as of the rich, in which they were to have equal privileges, even if they should be unable to purchase tickets of admission, is apparent from the act itself. (We speak not now of the act of November 6, 1833.) See school act of November 9, 1827. 2 vol. Vt. statutes, p. 136. §1, 2, 5, 6, and 9.

It is evident that the legislature, in offering the bounty of a share of the public moneys to such districts as should, with other moneys, support a school for two months in each year, meant it should be a school open to all, and for instruction in such branches as are enumerated in the act; not a private one, to which none could gain admittance but such as " brought money in their sacks' mouths," nor one for instruction in other branches than those mentioned in the act.

We contend that the act passed November 6, 1833, (2 vol. Vt. stat., p. 146. §2,) does not repeal the old law, requiring the two months' school, to be kept by the district, in order to entitle it to a share of the public moneys, to be a *public school.* Had the legislature been asked to pass an act in direct terms authorizing the raising of money on the scholar, and they had refused, and then the act had passed in

an amended form, it would have been in precisely its present form. There are no express words of repeal of the old system in this respect, neither does the language used necessarily imply any such intention, but rather the reverse ; for, had they so intended, they would have said so in plain terms. It is one of those stratagems, by which, not unfrequetly, an act is got through the legislature by talking it over to them as meaning one thing, and, as soon as it has become a law, making use of it for another purpose, such as, had it been suspected by the legislature, would have prevented its passage. At least, the legislature's intention should be very clear, and expressed in no ambiguous terms, before that disrespect should be cast upon the legislature, involved in the construction, that they intended the keeping of a private school in each district, to which every one must pay that sends. As to the rules to be observed in construing Statute ; see 1 Bl. Com. p. 88, § 5. 1 do. p. 89, § 7. 1 do. p. 90, 91, § 10. 1 do. p. 91, n. 22. *Love* v. *Estes et al.*, 6Vt. R. 290.

The opinion of the court was delivered by

Royce, J.—Several objections are taken to the sufficiency of the defendant's justification, which he offered to prove at the trial :—

1. Because the tax was voted to be raised upon the scholar, and not upon the list of polls and rateable estate.

2. Because it was not sufficiently definite in amount; and,

3. Because it was prematurely voted.

We are sensible that the enquiry, involved in the first objection, is of deep importance to the public interest, and should extremely regret to fall into any mistaken construction of the statutes relating to it. By the third section of the act of October 31, 1797, it is enacted " that the inhabitants of any school district, at a legal meeting, holden for that purpose, shall have power to raise money, by a rate or tax, on the list of the polls and rateable property of the inhabitants of such district, or by subscription, or otherwise, as they shall think most proper, for the purpose of erecting and repairing shool houses, and supporting schools in such districts." This was the only permanent provision for the support of common shools, except the aid derived from the rent of public lands, until the acts of 1810 and 1824,

were passed.   By these statutes an annual tax upon the list, first of one cent, and then of two cents on the dollar, was granted for this object.   Next came the act of 1827, which is still in force; and which, by the 11th section, has reaffirmed the power of districts to vote taxes on the list for general purposes, as the erection and repair of school houses, &c., including the support of schools.   But to this section is added a proviso, that, for the support of schools, (omitting the other objects before enumerated) the districts shall have power to raise money by subscription or otherwise. It will thus be seen that from the passage of the act of 1797, the law, on this particular point, has remained substantially the same.   Under that statute, it was the unquestioned practice for the districts to support their respective schools in the manner indicated by their votes; either wholly upon the list, or wholly upon the scholar, or partly upon each. And such being the well known practical construction of that statute, we must suppose that a similar enactment in the subsequent act of 1827, was meant to receive a like interpretation.   If the term " otherwise," in the former statute had authorized a tax to be voted upon the scholar, the same language in the latter act could do no less.   But this matter is placed beyond doubt by the explanatory act of 1833, which says;—" that the proviso to the 11th section of the act of 1827, shall not be construed to empower a district to raise money for the support of a school, upon any scholar who does not attend the district school."   Now upon the principles of construction uniformly applied to such limitations in a statute, here is a satisfactory recognition of the power to raise money upon scholars who do attend the school. It is urged, that, upon this construction, the great objects of our system of popular education may be defeated ; that a school, supported in any degree upon the scholar, may cease to be a public and free school, and become, in effect, a private and exclusive one ; and, becoming so, that it will not entitle the district to their portion of the public moneys, to be distributed for the support of schools.   These suggestions, however important in a future revision of the law, are not sufficient to change the construction of our present statutes.   The only definition, which they have given of a free district school, is one to which all inhabitants of the district are at liberty to

send. Such schools are now supported, in a considerable measure, by taxes raised upon the list, the interest of public moneys, and the rents of public lands. The balance of moneys required for their support, may legally be raised upon the list or scholar, as a majority of the legal voters shall prefer. Such is not only the obvious construction of the several statutes, but the received opinion upon which most of the districts throughout the state are believed to act.

The vote was to raise a sum, not exceeding one hundred dollars, for the support of a school for the winter then next ensuing, " said sum to be the amount of the expense of said school, after deducting sixty dollars of public money." It is objected that here was a discretion left with the prudential committee as to the amount to be raised, within the limitation of one hundred dollars. Admitting this to be true, we do not perceive that it furnishes any valid objection. The district protected themselves by the limitation, and the amount of expense to be incurred, within the limit prescribed, was a matter properly entrusted to the judgment of the committee. It is believed that votes of towns, as well as school districts, to raise taxes not exceeding a specified sum, are sanctioned by very general practice.

The third objection is evidently without foundation, as the tax was not to be assessed upon any list whatever. In such a case it is only requisite, that the vote should direct the tax to be assessed and collected within a reasonable and limited time.

Judgment of the county court reversed.